UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **ROBERT BARKLEY,** | § | |
| | § | |
| **Plaintiff,** | § | |
| v. | § | CIVIL ACTION NO. H-06-843 |
| | § | |
| **DILLARD'S, INC.,** | § | |
| **HARRIS COUNTY, TEXAS,** | § | |
| and **WILLIAM WILKINSON,** | § | |
| | § | |
| **Defendants.** | § | |

## MEMORANDUM AND ORDER

Pending before the Court are the following motions: Motions for Summary Judgment filed by Defendants Dillard's, Inc., Harris County, Texas, and William Wilkinson (Docket Nos. 38, 39, and 43); Plaintiff's Motion to File Second Amended Complaint (Docket No. 37); Defendant William Wilkinson's Motion to Strike First Amended Complaint (Docket No. 55); and Defendant William Wilkinson's Motion to Strike Report of Roger A. Clark and Exclude Testimony at Trial (Docket No. 65). After considering the parties' filings and the applicable law, the Court finds that summary judgment should be granted to all Defendants, and that all other pending motions should be terminated as moot.

### I. BACKGROUND

Plaintiff Robert Barkley brings this civil rights case to seek redress for his shooting by Defendant William Wilkinson.

On May 7, 2004, Plaintiff Barkley drove to a Dillard's department store in Harris County, Texas.[1] Defendant William Wilkinson, then a Harris County Sheriff's deputy who also worked part-time as a Dillard's security guard, was on duty at the store that evening. While working at Dillard's, Wilkinson wore his Sheriff's Department uniform and carried his (loaded) duty weapon.

Plaintiff entered the Dillard's store and proceeded to the men's department, carrying a Dillard's bag with some merchandise inside. While Plaintiff was browsing, Wilkinson received a radio communication from a Dillard's employee monitoring the surveillance cameras. The employee, James Wheat, informed Wilkinson that he had observed a male individual in the store who had been known to place items of clothing in a bag and exit without paying for them. Wheat asked Wilkinson to go to the first floor of the store, to be in the area in case the individual attempted to steal something. As Wilkinson was proceeding to the men's department, Wheat radioed him again to say that he had seen the individual steal some merchandise, head towards the exit, and turn left out of the store.[2] Wilkinson moved to intercept the individual, but did not visually identify him until they were both outside.

At this point, Barkley's and Wilkinson's accounts of the ensuing events diverge. Plaintiff asserts that he walked quickly to his car after leaving the store, and that he never heard anyone calling for him to stop. Plaintiff got into his car, started the engine, and reversed out of the parking space. Only then did Plaintiff observe Wilkinson moving towards him and shouting "Stop." Plaintiff states that while the car was still in reverse,

---

[1] Although each version of Plaintiff's complaint states that the shooting incident occurred on May 8, 2004, the summary judgment evidence (and Plaintiff's responses to the summary judgment motions) indicates that the correct date is May 7, 2004.
[2] Plaintiff admits that he attempted to shoplift from Dillard's that evening. Def. Dillard's Mot. Summ. J., Ex. A, pp. 36-37 (dep. of Robert Barkley).

he removed his hands from the steering wheel, and was fired on three times by Wilkinson. Barkley then put the car in park, got out, and fell to the ground.

According to Defendant Wilkinson, after he exited Dillard's, he observed a man fitting Wheat's description of the shoplifter (a black male wearing a blue dress shirt and carrying a Dillard's bag). The individual was running away, and Wilkinson pursued him into and through the parking lot, yelling at him to stop and identifying himself as a Sheriff's deputy. The individual entered his car and backed out of the parking space, then suddenly stopped, shifted into drive, and began driving towards Wilkinson, accelerating as he got closer. Wilkinson was penned in on either side by parked cars and could not escape; he drew his weapon and continued to yell at the individual to stop, firing only when the car kept moving towards him. After he fired, the car stopped and rolled backwards before Plaintiff eventually got out and fell to the ground.

Plaintiff suffered three gunshot wounds, to his arm, jaw, and shoulder. He was ultimately charged with felony theft and aggravated assault on a police officer; he pled guilty to the theft, and the aggravated assault charge was dismissed. Wilkinson was not disciplined for the shooting in the Dillard's parking lot.

Plaintiff filed this lawsuit in March 2006 against Dillard's, Inc., Harris County, and William Wilkinson, asserting federal civil rights and state law claims.[3] Plaintiff alleges that all three Defendants are liable under 42 U.S.C. § 1983 for violations of his rights under the Fourth, Fifth, and Fourteenth Amendments – Wilkinson for his use of

---

[3] Plaintiff has filed three complaints in this case: an original Complaint, a First Amended Complaint, and a First Amended Complaint (Corrected). Additionally, Plaintiff has requested leave to file a Second Amended Complaint. Defendants Dillard's, Inc. and Wilkinson both object to the Second Amended Complaint, and Defendant Wilkinson has also moved to strike the First Amended Complaint (Corrected). In order to address all of Plaintiff's possible claims, and in light of the fact that all three summary judgment motions address the claims contained in the Second Amended Complaint, the Court will treat the most recent version of the complaint as the live pleading.

excessive force, Harris County for its maintenance of policies or customs exhibiting deliberate indifference, and Dillard's for performing an exclusive government function (hiring Sheriff's deputies to enforce federal and state law). Plaintiff also claims that Wilkinson is liable under 42 U.S.C. § 1985 for conspiring to cover up the improper nature of the shooting. Finally, Plaintiff asserts the following state law causes of action: assault and battery against Wilkinson, negligence, gross negligence, and respondeat superior against Dillard's, and intentional infliction of emotional distress against all Defendants. Plaintiff seeks compensatory damages, punitive damages, and attorney's fees under 42 U.S.C. § 1988.

All three Defendants now move independently for summary judgment on all claims.

## II. ANALYSIS

### A. Summary Judgment Standard

A motion for summary judgment under Federal Rule of Civil Procedure 56 requires the Court to determine whether the moving party is entitled to judgment as a matter of law based on the evidence thus far presented. FED. R. CIV. P. 56(c). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Kee v. City of Rowlett*, 247 F.3d 206, 210 (5th Cir. 2001) (quotations omitted). A genuine issue of material fact exists if a reasonable jury could enter a verdict for the non-moving party. *Crawford v. Formosa Plastics Corp.*, 234 F.3d 899, 902 (5th Cir. 2000).

4

The Court views all evidence in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Id*.

### B. Defendant Wilkinson's Motion for Summary Judgment

Defendant Wilkinson raises several issues in his motion for summary judgment, including the Rule 12(c) standard for judgment on the pleadings, qualified and official immunity, and election of remedies under Texas law. The Court need not address these, however, because it finds that Plaintiff's claims are barred by the relevant statutes of limitations.

Plaintiff's state law claims against Wilkinson for assault and battery and intentional infliction of emotional distress are governed by a two-year statute of limitations. TEX. CIV. PRAC. & REM. CODE ANN. § 16.003(a) (Vernon 2002) ("a person must bring suit for . . . personal injury . . . not later than two years after the day the cause of action accrues."). The two-year limitations period also applies to Plaintiff's Section 1983 and Section 1985 claims. *E.g.*, *Wallace v. Kato*, 127 S.Ct. 1091, 1094 (2007) ("Section 1983 provides a federal cause of action, but in several respects relevant here federal law looks to the law of the State in which the cause of action arose. This is so for the length of the statute of limitations: It is that which the State provides for personal-injury torts."); *Burge v. Parish of St. Tammany*, 996 F.2d 786, 787 (5th Cir. 1993) (applying the Louisiana statute of limitations for tort actions to Section 1983 and Section 1985 claims); *Shaw v. McCorkle*, 537 F.2d 1289, 1291 (5th Cir. 1976) ("It is well established that federal courts must look to the applicable state statute of limitations if Congress has not as it has not for § 1983 and § 1985 actions provided a federal statutory limitation period.").

5

Under a well-developed body of Texas law, "[t]o toll the statute of limitations, a plaintiff must not only file suit within the limitations period, but must also exercise due diligence in procuring the issuance and service of citation." *Gant v. DeLeon*, 786 S.W.2d 259, 260 (Tex. 1990). Even if service is not actually effected until after the statutory period has expired, "the date of service may relate back to the date of filing if the plaintiff exercised due diligence in effecting service." *Id.* A number of federal courts applying the Texas statute of limitations have also followed the state rule requiring diligent service. *E.g.*, *Saenz v. Keller Indus. of Texas, Inc.*, 951 F.2d 665, 667 (5th Cir. 1992); *Curry v. Heard*, 819 F.2d 130, 132 (5th Cir. 1987); *Lopez v. Unknown Galveston Police Officer #1*, No. G-06-0371, 2006 WL 3702895, at *9 (S.D. Tex. Dec. 13, 2006); *DirecTV, Inc. v. Chan*, No. SA-03-CV-417-RF, 2004 WL 2616304, at *5 (W.D. Tex. Nov. 16, 2004); *Bilsing v. State Indus., Inc.*, 173 F. Supp. 2d 593, 596 n.7 (S.D. Tex. 2001); *Wehmeyer v. Clay*, No. V-81-30, 1988 WL 88191, at *1 (S.D. Tex. Mar. 7, 1988).

Defendant Wilkinson argues that Plaintiff's claims against him are time-barred because Barkley failed to make diligent efforts to serve Wilkinson, and therefore did not toll the statute of limitations. The limitations period for these claims expired two years after the shooting, on May 7, 2006. Plaintiff first filed suit against Wilkinson on March 30, 2006, but service was not effected until December 27, 2006, almost nine months later, and less than six months before the scheduled trial date. In fact, the first citation was issued to Mr. Wilkinson on May 9, 2006, after the limitations period had passed. It appears that subsequent citations were issued on May 18, 2006, July 26, 2006, and December 4, 2006, but that only the last was returned executed. *See* Def. Dillard's Reply 5 (chronology of attempts to serve).

Once a defendant has asserted the affirmative defense of statute of limitations, the burden shifts to the plaintiff to show due diligence in effecting service. *Murray v. San Jacinto Agency, Inc.*, 800 S.W.2d 826, 830 (Tex. 1990). A plaintiff must demonstrate "that diligence to procure service which an ordinarily prudent person would have used under the same or similar circumstances." *Belleza-Gonzalez v. Villa*, 57 S.W.3d 8, 12 (Tex. App. 2001) (citation omitted); *Gonzalez v. Phoenix Frozen Foods, Inc.*, 884 S.W.2d 587, 590 (Tex. App. 1994). Due diligence is assessed by examining the length of time taken to complete service, and the effort expended by the plaintiff. *Carter v. MacFadyen*, 93 S.W.3d 307, 313 (Tex. App. 2002); *Webster v. Thomas*, 5 S.W.3d 287, 289-90 (Tex. App. 1999). In his response to the summary judgment motion, Plaintiff's counsel Randall Kallinen maintains that he diligently pursued service on Wilkinson. Pl.'s Resp. 21-23.[4]

Mr. Kallinen states that he first contacted a process server around May 5, 2006, over a month after Plaintiff filed suit against Wilkinson. Although that individual agreed to serve Wilkinson, he informed Mr. Kallinen that he was "unfamiliar with service requirements." *Id.* at 21. Mr. Kallinen "found out later that [the process server] only served the summonses without the lawsuit and also, the address on Wilkinson was likely wrong." *Id.* Later in the month, Mr. Kallinen contacted a second individual and requested that he serve process on Defendants Wilkinson and Harris County. Although service was successfully effected on Harris County, Mr. Kallinen states that the server "could not get a good address on Wilkinson." *Id.* at 22. Mr. Kallinen claims that he

---

[4] Plaintiff also argues that there "is no equity" in Wilkinson's argument that he was not timely served, "as Wilkinson had to know about the case against him for several separate reasons," including the fact that he was sued in another police shooting case involving some of the same Harris County lawyers as this case, and the appearance of an article in the local newspaper about the lawsuit in April 2006. Neither of these details, of course, constitutes proper service, or tolls the statute of limitations.

7

inquired about the process server's efforts "frequently," but that in September or October 2006, with service still incomplete, the server essentially "dropped the case back in our lap." *Id.* Mr. Kallinen was evidently unable to find another process server until November 2006. This individual apparently made several efforts to serve, and stayed in relatively frequent contact with Mr. Kallinen. Over a month later, he finally served Wilkinson through his wife.

Although the question of diligence is generally a question of fact, "if no excuse is offered for a delay in the service of citation, or if the lapse of time and the plaintiff's acts are such as conclusively negate diligence, a lack of diligence will be found as a matter of law." *Webster v. Thomas*, 5 S.W.3d 287, 289 (Tex. App. 1999). Numerous courts have found a lack of diligence as a matter of law in circumstances less egregious than those before the Court: a nine-month delay between filing and service, issuance of a first citation after the limitations period had expired, hiring a process server unfamiliar with the requirements of service, a two-month gap between the second and third citations, and an almost five-month gap between the third and fourth citations. *See, e.g.*, *Boyattia v. Hinojosa*, 18 S.W.3d 729, 733-34 (Tex. App. 2000) (plaintiff's failure to act during clerk's three-month delay in issuing citation constituted lack of diligence); *Jimenez v. County of Val Verde*, 993 S.W.2d 167 (Tex. App. 1999) (eight-month delay in service constituted lack of diligence, despite plaintiff's attempt to blame process server); *Rodriguez v. Tinsman & Houser*, 13 S.W.3d 47, 49-51 (Tex. App. 1999) (finding lack of diligence in one-month delay between filing and service, even though delay was due to miscommunication); *Gonzalez*, 884 S.W.2d at 590 (reliance on process server and five-month delay after limitations period expired did not, as a matter of law, constitute due

8

diligence); *Allen v. Bentley Labs., Inc.*, 538 S.W.2d 857 (Tex. App. 1976) (finding lack of diligence as a matter of law when six months elapsed between filing and service).

In light of these precedents, the Court is compelled to find that the actions of Plaintiff's counsel demonstrated a lack of diligence as a matter of law, and that he has failed to provide a valid excuse for his negligence. Mr. Kallinen has neither asserted nor established any unusual challenges posed by the task of serving Defendant Wilkinson, and his suggestions of incompetence on the part of the process servers are unavailing. *E.g.*, *Gonzalez*, 884 S.W.2d at 590 (an attorney's "misplaced reliance on his process server did not constitute due diligence. It is the responsibility of the one requesting service, not the process server, to see that service is properly accomplished."). It is, of course, deeply regrettable that Plaintiff's claims, stemming from an unquestionably painful incident, must be disposed of on such frustratingly prosaic procedural grounds. Indeed, the Court might be inclined under different circumstances to forgive an attorney's failings in order not to prejudice his or her client. In situations involving statutes of limitations, however, the Court must also consider Defendant's interests in "a fair opportunity to defend while witnesses are available and the evidence is fresh in their minds," *Willis v. Maverick*, 760 S.W.2d 642, 644 (Tex. 1988), and in reaching a "point of repose." *Murray*, 800 S.W.2d at 828. Therefore, Plaintiff's claims against Wilkinson for assault and battery and intentional infliction of emotionally distress, as well as his claims under 42 U.S.C. §§ 1983 and 1985, are precluded under the two-year Texas statute of limitations.

Plaintiff also may not assert a state law cause of action against Wilkinson for malicious prosecution. In the Court's view, this claim was not properly stated in any of

Plaintiff's complaints. Even if it were, however, it would be precluded by the applicable one-year statute of limitations. TEX. CIV. PRAC. & REM. CODE ANN. § 16.002 (Vernon 2002). Malicious prosecution claims accrue upon the termination of the criminal prosecution. *Patrick v. Howard*, 904 S.W.2d 941, 994 (Tex. App. 1995). Defendant Wilkinson correctly states that the limitations period for a malicious prosecution claim asserted by Plaintiff would expire on November 4, 2005, one year after the aggravated assault charge against Plaintiff was dismissed. Because Plaintiff first filed suit against Wilkinson on March 30, 2006, any claim for malicious prosecution is time-barred.

Because the Court has found that all of Plaintiff's causes of action against Wilkinson are precluded by the relevant statutes of limitations, summary judgment should be granted to Wilkinson on all claims.

### C. Defendant Harris County's Motion for Summary Judgment

Defendant Harris County moves for summary judgment on Plaintiff's claims under 42 U.S.C. § 1983 (for allegedly maintaining unconstitutional policies and customs), and intentional infliction of emotional distress. The Court finds that the county's liability is precluded by the dismissal of claims against Defendant Wilkinson.

The Court has granted summary judgment to Defendant Wilkinson on all claims, including those under Sections 1983 and 1985. Because Wilkinson's allegedly unconstitutional conduct formed the nucleus of Plaintiff's case against Harris County, and because Plaintiff cannot now prove any of his assertions against Wilkinson, Plaintiff's Section 1983 claim against the county must be dismissed. *See, e.g.*, *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) ("If a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the

10

departmental regulations might have *authorized* the use of constitutionally excessive force is quite beside the point."); *Saenz v. Heldenfels Bros., Inc.*, 183 F.3d 389, 392-93 (5th Cir. 1999) (finding that where appellants failed to allege that deputy sheriff deprived them of a constitutional right, as required by Section 1983, county's liability was precluded).  Therefore, summary judgment should be granted to Defendant Harris County on Plaintiff's Section 1983 claim.  Because no federal claims remain, the Court declines to exercise supplemental jurisdiction over Plaintiff's state law cause of action for intentional infliction of emotional distress.

### D.  Defendant Dillard's, Inc.'s Motion for Summary Judgment

Defendant Dillard's, Inc. also moves for summary judgment on Plaintiff's federal and state law claims.  The Court finds that Dillard's is entitled to summary judgment on all causes of action.

In order to state a federal civil rights claim against Dillard's, Plaintiff must establish that Dillard's is a "state actor" under Section 1983.  On this issue, the Court is clearly controlled by the Fifth Circuit's directly applicable opinion in *Morris v. Dillard Dep't Stores*, 277 F.3d 743 (5th Cir. 2001).  In *Morris*, an off-duty police officer working at Dillard's as a private guard arrested an individual on suspicion of shoplifting.  Morris then filed suit against the store, Dillard's insurer, and the police officer. Morris asserted a Section 1983 claim against Dillard's, but the Fifth Circuit affirmed the district court's grant of summary judgment on the ground that Dillard's was not a state actor as a matter of law.  The Fifth Circuit explained its "consistent doctrine applying a nexus-type test to determine when a private enterprise such as Dillard's may be subject to constitutional liability," *id.* at 748; essentially, "a merchant is not a state actor unless the conduct on the

part of a guard or officer giving rise to the claimed deprivation occurred based solely on designation of suspicion by the merchant and was not accompanied by any independent investigation by the officer." *Id.* at 749.  The "crucial" focus of the inquiry is whether an officer "acted according to a preconceived plan and on the say-so of the private actor, not on the basis of [the officer's] own investigation."  *Id.* (quoting *Bartholomew v. Lee*, 889 F.2d 62, 63 (5th Cir. 1989)).

In the Court's view, Dillard's is entitled to judgment as a matter of law on Plaintiff's Section 1983 claim because, even when viewing the facts in the light most favorable to Plaintiff, no reasonable jury could conclude that Dillard's was a state actor. Plaintiff's injury stems from his shooting by Wilkinson, and Plaintiff has introduced no evidence that the shooting occurred pursuant to any specific, preconceived policy agreed upon by Dillard's and Wilkinson.  Plaintiff points to Dillard's policy that shoplifting suspects should be apprehended outside the store, arguing that that practice essentially placed Wilkinson in the parking lot with Barkley.  *See* Pl.'s Resp., Ex. 29 ("Dillard's, Inc. Rules and Procedures for Security Personnel").  Even if Plaintiff's interpretation of the policy were correct, Plaintiff does not claim that Wilkinson's mere presence in the parking lot violated his constitutional rights, and the policy does not appear to suggest or sanction shooting potential shoplifters.  In fact, Plaintiff's arguments under Section 1983 that Dillard's inadequately trained and supervised its security officers with regard to the use of deadly force would seem to undermine any assertion that the officers were actually *instructed* under a pre-existing policy to engage in conduct that might lead to a shooting.

Plaintiff has also introduced no evidence suggesting that Wilkinson shot him at the direction of any Dillard's employee.  Wilkinson was instructed by Dillard's employee

James Wheat to *observe* Plaintiff, but nothing in the summary judgment record indicates that Wilkinson was directed to pursue Plaintiff through the parking lot, place himself near Plaintiff's car, draw his weapon, or fire at Plaintiff.  Wilkinson himself states, in a declaration and in his deposition, that in pursuing Plaintiff through the parking lot and in attempting to stop him, he acted in his own capacity as a peace officer, not under the instruction of anyone from Dillard's.  Def.'s Mot. Summ. J., Exs. B, E.

Furthermore, Wilkinson independently observed Plaintiff not only carrying a bag ostensibly containing stolen goods, but also – at a minimum – walking very quickly to his car and rapidly reversing out of his parking space, apparently to evade detection. Wilkinson also wrote up a police report of the incident.  *Id.*, Ex. F.  In *Morris* and preceding cases, the Fifth Circuit has laid out a relatively low standard for what types of actions constitute "independent investigation."  *E.g.*, *Morris*, 277 F.3d at 750 (noting that the officer filled out his own police incident report as a factor indicating an independent investigation); *Hernandez v. Schwegmann Bros. Giant Supermkts., Inc.*, 673 F.2d 771, 771-72 (5th Cir. 1982) (holding that interviewing a merchant employee to obtain an eyewitness account can constitute sufficient independent investigation).  The factual disputes between the parties as to the details of the events in the parking lot – whether Plaintiff was running, or whether Plaintiff drove towards Wilkinson, putting him in fear for his life – are immaterial to the central questions of whether a pre-conceived plan existed, and whether Wilkinson independently investigated Plaintiff's conduct.  Because Plaintiff can neither prove that such a plan existed, nor negate the evidence that Wilkinson performed at least some independent investigation of Plaintiff's conduct

13

before shooting him, summary judgment should be granted to Dillard's on Plaintiff's Section 1983 claim.

Even if Dillard's were a proper defendant under Section 1983, the principles articulated above with regard to Harris County would apply with equal force to Dillard's. Because there can be no finding of liability for constitutional violations as to Defendant Wilkinson, Dillard's, Inc.'s liability under Section 1983 is precluded. No federal claims remain against Dillard's, and the Court declines to exercise its supplemental jurisdiction over Plaintiff's state law causes of action for negligence, gross negligence, respondeat superior, and intentional infliction of emotional distress.

### III.  CONCLUSION

The motions for summary judgment filed by Defendants Dillard's, Inc., William Wilkinson, and Harris County, Texas are hereby **GRANTED**. All other pending motions are **TERMINATED AS MOOT.**

**IT IS SO ORDERED**.

**SIGNED** at Houston, Texas, on this the 24th day of May, 2007.

_____
KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE

**TO INSURE PROPER NOTICE, EACH PARTY WHO RECEIVES THIS ORDER SHALL FORWARD A COPY OF IT TO EVERY OTHER PARTY AND AFFECTED NON-PARTY EVEN THOUGH THEY MAY HAVE BEEN SENT ONE BY THE COURT.**